IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DANIEL STACEY,                          :          Case No. 1:13-cv-649
                                        :
         Plaintiff,                     :          Judge Susan J. Dlott
                                        :
v.                                      :
                                        :          ORDER GRANTING DEFENDANT'S
OFFICER BLANTON,                        :          MOTION FOR SUMMARY
                                        :          JUDGMENT (Doc. 18.)
         Defendant.                     :
                                        :


         Plaintiff Daniel Stacey brings this action against Defendant Justin Blanton, a Village of

Cleves Police Officer.  Stacey asserts false arrest and malicious prosecution claims under 42

U.S.C. § 1983.  (Doc. 1, Complaint.)  Officer Blanton's Motion for Summary Judgment (Doc.

18) is currently before the Court.

         For the following reasons, Defendant's Motion for Summary Judgment (Doc. 18) is

GRANTED.

I.       **BACKGROUND**[1]

         Around 11 PM on September 17, 2012, Stacey and two friends, George Batsakes and

Mitch Naseef, were driving to the Hollywood Casino in a 1982 Cadillac.  (Stacy Dep. 12, Doc.

17 at PageID 60.)  Batsakes was driving, with Naseef in the back seat behind him and Stacey in

the front passenger seat.  (*Id.* at 15, Doc. 17 at PageID 63.)  The Cadillac previously belonged to

Batsakes' deceased grandmother and was given to him by his grandfather.  (Stacey Aff. 1, Doc.

---

[1] Except as otherwise indicated, background facts are drawn from Defendant's Proposed Statement of Undisputed Facts. (Statement of Undisputed Facts pp. 1–3, Doc. 18-2 at PageID 147–49).  Contrary to the Court's Standing Order on Civil Procedure, Plaintiff has failed to file a "Response to Proposed Undisputed Facts" or a "Proposed Disputed Issues of Material Fact."  The Court has integrated Plaintiff's statement of facts, however "the Court has no duty when deciding a motion for summary judgment to scour the record for evidence that supports a plaintiff's claims."  *Abdulsalaam v. Franklin Cnty. Bd. Of Comm'rs,* 637 F. Supp. 2d 561, 576 (S.D. Ohio 2009) (citing *Williamson v. Aetna Life Ins. Co.,* 481 F.3d 369, 379 (6th Cir. 2007)).

21-1 at PageID 172.)  The trio stopped at a gas station so that Naseef could purchase some cigarettes.  (*Id.*)  After the stop, they pulled out of the gas station and traveled a short distance before being pulled over by Officer Blanton.

Officer Blanton was parked in the gas station parking lot when Stacey, Naseef, and Batsakes stopped for cigarettes.  According to Blanton, the individuals appeared uneasy and anxious upon noticing the patrol vehicle and quickly exited the lot.  (Blanton Aff. 1, Doc. 18-1 at PageID 144.)  Blanton subsequently ran the vehicle license plate number, found that it was registered to a deceased individual, and initiated an investigatory stop.  Blanton states that he had a clear, unobstructed view of the car and observed the front seat passenger making erratic movements that appeared to be an effort to conceal something.  (Blanton Aff. 2, Doc. 18-1 at PageID 145.)  Blanton approached the vehicle on the passenger side and talked to the occupants through the front passenger-side window, which was only one-third of the way open.  Blanton immediately smelled a strong odor of marijuana.  (*Id.*)  He further observed that Stacey was perspiring, refused to look at him, and appeared nervous and irritated.  (*Id.*)

Blanton informed Batsakes that he pulled him over because the car was registered to a deceased woman and requested Batsakes' license and registration.  Batsakes provided Blanton with his license and registration and suggested to Blanton that the registration was probably in his grandmother's name.[2]  (Stacey Aff. 2, Doc. 21-1 at PageID 173.)  Blanton asked the passengers if they had identification by inquiring "you guys got your IDs?"  (*Id.*; Blanton Aff. 2, Doc. 18-1 at PageID 2; Stacey Dep. 19–21, Doc. 17 at PageID 67–69.)  He subsequently shined his flashlight on Stacey and asked "what about you bud, you got your ID?"  (*Id.*, Ex. A.)  The conversation continued as follows:

---

[2] The passengers began recording the traffic stop using a cell phone.  (*Id.*, Ex. A, cell phone video footage.)

2

| | |
|---|---|
| STACEY: | I'm not doing anything wrong. |
| BLANTON: | Huh? |
| STACEY: | I'm not doing anything wrong.  Just along for the ride. |
| BLANTON: | I'm sorry. |
| STACEY: | I'm not, uh.  I don't feel like I need to give my ID.  I'm not doing anything wrong.  I'm just along for the ride. |

(*Id.*)  At this point, Officer Blanton radioed for back up.  He did not inform the occupants of the vehicle that they were suspected of any wrongdoing in order to keep them calm and compliant until backup arrived.  (Blanton Aff. 2, Doc. 18-1 at PageID 145.)

After the second officer arrived, Blanton instructed the officer to keep his eye on Batsakes and Naseef, stating that "I'm going to get the passenger out.  He's refusing to give me his ID."  The following exchange then took place:

| | |
|---|---|
| BLANTON: | You guys got anything in the car you shouldn't?  You got anything on you man? |
| STACEY: | Sir, I'm not doing anything wrong. |
| BLANTON: | I didn't say you were doing anything wrong, but when I ask for your ID you give it. |
| STACEY: | But what law am I breaking? |
| BLANTON: | I didn't say you were breaking a law. |
| STACEY: | I don't have to give my ID if I'm not breaking the law. |
| BLANTON: | You do have to give your ID.  Step out. |
| STACEY: | I'm not doing anything wrong. |
| BLANTON: | Step out. |
| BATSAKES: | I refuse the search and seizure. |

3

STACEY:       I don't consent to any search or seizure of my person.

BLANTON:      Step out.

STACEY:       If I do so I . . .

BLANTON:      I'm not asking again.  Step out.

STACEY:       I'm doing so under duress.

(*Id.*; Stacey Dep. 27–29, Doc. 17 at PageID 77–79.)

Blanton drew his taser upon giving the final order for Stacey to step out.[3]  According to Stacey, after exiting the vehicle Blanton directed him to put his hands behind his back, proceeded to push him around, and told him to "get out of here with that Fourth Amendment shit."  (Stacey Dep. 32, Doc. 17 at PageID 80.)  Stacey indicates that he was pushed up against the car and patted down, as Blanton ripped things out of his pocket.  (*Id.*)  Blanton thereafter handcuffed Stacey and put him in the back of the police cruiser.  (Stacey Dep. 33, Doc. 17 at PageID 81.)  Stacey states that he repeatedly told Officer Blanton that he had to tell him what he was being charged with or why he was being detained, but Blanton told him to shut up.  (Blanton Aff. 33, Doc. 17 at PageID 81.)

Meanwhile, Batsakes and Naseef remained in the car under the observation of the second officer.  (*Id.*)  After detaining Stacey in the back of the cruiser, Blanton removed Batsakes and Naseef from the car and had them sit on a guardrail.  (Stacey Dep. 33–34, Doc. 17 at PageID 81–2.)  Blanton then proceeded to search the car—first the passenger's side, then the driver's side.  (Stacey Dep. 36, Doc. 17 at PageID 84.)  Blanton observed in plain view on the passenger side floor, a digital scale covered with what appeared to be marijuana residue.  (Blanton Aff. 2–3, Doc. 18-1 at PageID 145–46.)  According to Blanton, the location of the scale was consistent

---

[3] The cell phone footage of the incident ends at this point.

4

with the furtive movements he observed upon initiating the traffic stop. (Blanton Aff. 3, Doc. 18-1 at PageID 146.) The residue on the scale was later tested and found to contain heroin, cocaine, and THC. (*Id.*)

Stacey claims that upon finding the scale, Blanton questioned Batsakes about it. Batsakes denied knowledge of the scale, leading Blanton to state "Oh, that's all right, I'll charge your buddy with it." (Stacey Dep. 39, Doc. 17 at PageID 87.) Blanton then returned to the cruiser and informed Stacey that he was going to charge him with possession of the scale and obstruction of official business. (*Id.*) Blanton transported Stacey to the Hamilton County Justice Center. (*Id.*)

Stacey estimates that the entire traffic stop took thirty to forty minutes. (Stacey Dep. 40, Doc. 17 at PageID 88.) Stacey was subsequently prosecuted for obstructing official business and possession of illegal drug paraphernalia. Neither Batsakes nor Naseef was charged. Stacey was acquitted of all charges. (Stacey Aff. 3, Doc. 21-1 at PageID 174.)

## II. SUMMARY JUDGMENT MOTION

Stacey brings this action pursuant to 42 U.S.C. § 1983, asserting a claim of false arrest.[4] Stacey maintains that Officer Blanton violated his Fourth Amendment rights because Stacey was arrested without probable cause. He claims that he was arrested and subsequently prosecuted for refusing to provide Officer Blanton with his identification.

Officer Blanton moves the Court for summary judgment, arguing that his conduct did not result in a constitutional violation and, in any event, he is entitled to qualified immunity.

---

[4] Stacey also brought a claim of malicious prosecution in the complaint. However, Stacey has since conceded that discovery has shown that there is insufficient evidence to show that Blanton maliciously prosecuted him under state or federal law. (Plaintiff's Response 1, Doc. 21 at PageID 156.) The Court grants Stacey's request to dismiss the malicious prosecution claim with prejudice and will therefore focus only on his false arrest claim.

5

According to Blanton, he had probable cause to arrest Stacey for obstruction of official business based upon Stacey's failure to produce his ID or exit the vehicle, despite Blanton's repeated requests for him to do so.  He further contends that his arrest of Stacey for possession of drug paraphernalia was supported by probable cause based upon his observation of Stacey making furtive movements upon initiating the traffic stop; the smell of marijuana from the car; Stacey's failure to provide his ID or exit the vehicle; his observation that Stacey avoided eye contact and appeared nervous and was perspiring; and Blanton's observation of a digital scale with what appeared to be marijuana residue on it on the passenger-side floor.

## III.  ANALYSIS

### A.  Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  All reasonable inferences from the record must be drawn in the light most favorable to the nonmoving party, and the court may grant summary judgment only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).  The moving party may support the motion for summary judgment with affidavits or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  In responding to a summary judgment motion, the nonmoving party may not rest upon the pleadings but must go beyond the pleadings and "present affirmative evidence in order to defeat a properly supported motion for summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).  The task of the Court is

6

not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249.

**B. Qualified Immunity Framework**

In order to prevail on a claim brought pursuant to 42 U.S.C. § 1983, Stacey "must establish that a person acting under color of state law deprived him of a right secured by the Constitution or laws of the United States." *Waters v. Morristown*, 242 F.3d 353, 358–59 (6th Cir. 2001). Stacey must also overcome the qualified immunity defense raised by Officer Blanton, which shields government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). The plaintiff bears the ultimate burden of proof to establish that a defendant is not entitled to qualified immunity. *Rich v. City of Mayfield Heights,* 955 F.2d 1092, 1095 (6th Cir. 1992). Plaintiff must satisfy a two-pronged analysis: (1) Taken in the light most favorable to the party asserting the injury, do the facts alleged show that the official's conduct violated a constitutional right, and (2) if a violation could be made out on a favorable view of the plaintiff's submissions, was the right clearly established at the time of the injury? *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223 (2009). "The concern of the qualified immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct." *Dorsey v. Barber*, 517 F.3d 389, 394 (6th Cir. 2008) (quoting *Smoak v. Hall,* 460 F.3d 768, 777 (6th Cir. 2006)). The doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Humphrey v. Mabry*, 482 F.3d 840, 847 (6th Cir. 2007).

7

### C. False Arrest

The Fourth Amendment provides that "The right of the people to be secure in their persons, . . . against unreasonable searches and seizures, shall not be violated. U.S. Const. amend IV. The Fourth Amendment provides a federal constitutional right to be arrested only upon probable cause. *United States v. Torres-Ramos*, 536 F.3d 542, 554 (6th Cir. 2008). "A false arrest claim under federal law requires a plaintiff to prove that the arresting officer lacked probable cause to arrest the plaintiff." *Voyticky v. Vill. of Timberlake, Ohio*, 412 F.3d 669, 677 (6th Cir. 2005). Probable cause to arrest "exists when 'the facts and circumstances known to the officer warrant a prudent man in believing that *an offense* has been committed.'" *Mott v. Mayer*, 524 F. App'x 179, 187 (6th Cir. 2013) (emphasis in original) (quoting *Miller v. Sanilack Cnty.*, 606 F.3d 240, 248 (6th Cir. 2010)). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer *at the time of the arrest*." *Arnold v. Wilder*, 657 F.3d 353, 363 (6th Cir. 2011) (quoting *United States v. Pearce*, 531 F.3d 374, 380–81 (6th Cir. 2008)); *see also Radvansky v. City of Olmstead Falls*, 395 F.3d 291, 302 (6th Cir. 2005) (noting that probable cause is assessed "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight").

In this case, Stacey has failed to carry his burden to show that Officer Blanton's conduct violated his Fourth Amendment rights. As noted above, Blanton arrested Stacey for both obstruction of official business and possession of drug paraphernalia. In response to the Summary Judgment Motion, Stacey does not directly address whether Officer Blanton had probable cause to support the arrest for possession of drug paraphernalia. Instead, Stacey focuses entirely on his arrest for obstruction of official business. (*See* Plaintiff's Response 9–15,

Doc. 21 at PageID 164–70.) According to Stacey, there was no probable cause to arrest on the obstruction of official business charge because Stacey's conduct did not include an affirmative act, as required under Ohio law. However, to avoid liability for false arrest under § 1983, Blanton only needed probable cause to arrest on one of the two charges. *See Atkins v. Twp. of Flint*, 94 F. App'x 342, 348 (6th Cir. 2004) ("Defendants only needed probable cause to arrest [the plaintiff] on *a* charge; they did not need probable cause to arrest him on *all* charges") (emphaisis in original). The Court nevertheless will consider whether Officer Blanton had probable cause to arrest Stacey for possession of drug paraphernalia. *Cf. Hicks v. Concorde Career Coll.*, 449 F. App'x 484, 487 (6th Cir. 2001) (holding that a district court properly declines to consider the merits of a claim when a plaintiff fails to address it in response to a motion for summary judgment).

Ohio Rev. Code § 2925.14(C)(1) states that "no person shall knowingly use, or possess with the purpose to use, drug paraphernalia." Drug paraphernalia includes "[a] scale or balance for weighing or measuring a controlled substance." § 2925.14(A)(6). Stacey does not dispute that Officer Blanton found a scale in the vehicle with what appeared to be marijuana residue on it. It is also undisputed that Blanton observed in plain sight the scale on the passenger-seat floor after Stacey got out of the vehicle. Stacey's only contentions with regard to the paraphernalia are that the scale did not belong to him and that constructive possession of it should have been imputed to the driver.

The Court finds both arguments insufficient to conclude that Officer Blanton did not have probable cause to arrest Stacey for possession of drug paraphernalia. First, as noted above, probable cause is assessed "from the perspective of a reasonable officer on the scene, rather than

with 20/20 vision of hindsight." *Radvansky*, 395 F.3d at 302. Because the Court must assess whether or not probable cause existed at the time of the arrest, the fact that "[i]t turned out that the scale found in the car belonged to one of [Batsakes]'s friends" is irrelevant. (*See* Plaintiff's Response 8, 11-12, Doc. 21 at PageID 163, 166-67.) The same is true of the fact that Stacey denied knowledge of the scale at the time of his arrest. *See Criss v. Kent*, 867 F.2d 259, 263 (6th Cir. 1988) ("A policeman . . . is under no obligation to give any credence to a suspect's story nor should a plausible explanation in any sense require the officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause.").

Second, Stacey has provided no support for his conclusory assertion that constructive possession of the paraphernalia should have been imputed to the driver. To the contrary, possession under Ohio law may be actual or constructive. *State v. McDermott*, No. 2002-CA-110, 2002 WL 31819660, at *3 (Ohio App. 5 Dist. Dec. 16, 2002) (citing cases). "To establish constructive possession, the state must prove that the defendant was able to exercise dominion or control over the object, even though that object may not be within his immediate physical possession." *State v. Boyd*, 580 N.E.2d 443, 446 (Ohio App. 8 Dist. Aug. 14, 1989). As noted above, in this case it is undisputed that Officer Blanton observed the scale in the front passenger-seat floor, where Stacey was seated and could exercise control over the paraphernalia. Officer Blanton reasonably found that Stacey had constructive possession over the scale in determining he had probable cause to arrest him on the drug paraphernalia charge.[5]

---

[5] Although directed to the probable cause determination for the obstruction of official business charge, Stacey also contends that Officer Blanton cannot rely on Stacey's refusal to provide identification or to exit the vehicle to establish probable cause because Blanton never specifically asked him to produce identification and Stacey never explicitly refused to exit the vehicle. Stacey points to the fact that "Blanton never asks for identification, only if they HAVE identification." (Plaintiff's Response 12–13, Doc. 21 at PageID 166–67.) However, the meaning of Blanton's question was apparently not lost on Stacey, who responded "I don't feel like I need to give my ID." (Stacey Aff. 2, Doc. 21-1 at PageID 173.) Stacey similarly responded to Blanton's order to get out of the car by

Viewing the record in the light most favorable to Plaintiff and after careful consideration of the facts and circumstances known to Officer Blanton at the time, the Court finds that Stacey has failed to show that the Blanton's conduct violated his Fourth Amendment rights.  Blanton possessed reasonable suspicion to initiate a traffic stop after determining that Batsakes' vehicle was registered to a deceased woman.  *See Hoover v. Walsh*, 682 F.3d 481, 494 (6th Cir. 2012).  Upon performing a lawful traffic stop to investigate whether the car was stolen, Blanton was within his rights to request identification from and to order Stacey out of the car.  *Maryland v. Wilson*, 519 U.S. 408 (1997) (holding that a police officer may as a matter of course order a passenger of a lawfully stopped car to exit the vehicle); *United States v. Alexander*, 467 F. App'x 355, 367 (6th Cir. 2012) ("an officer does not violate the Fourth Amendment during a traffic stop by asking for passenger identification, even where there was no reasonable suspicion of any wrongdoing by the passengers").  As the Supreme Court has observed, "[t]he risk of harm to both the police and the occupants [of a stopped vehicle] is minimized. . . if the officers routinely exercise unquestioned command of the situation."  *Arizona v. Johnson*, 555 U.S. 323, 331 (2009) (internal quotation marks and citations omitted).

Officer Blanton reasonably determined that the circumstances required him to call for back up and to remove Stacey from the vehicle to ensure officer safety.  (*See* Blanton Aff. 2, Doc. 18-1 at PageID at 145.)  Blanton was investigating a potentially stolen car, smelled marijuana, and confronted Stacey, who was uncooperative and observed making motions consistent with concealing something inside the vehicle.  (*Id.*)  Stacey does not argue, nor is it

---

saying he did not consent to any seizure of his person.  (*Id.* at 3, Doc. 21-1 at PageID 174.)  Although all inferences must be drawn in the nonmoving party's favor, this rule does not apply to unreasonable or impermissible inferences.  *Jones v. Potter*, 488 F.3d 397, 407 (6th Cir. 2007).

apparent from the record, that Stacey's detention was unreasonably prolonged or disproportionate to the factual circumstances. Without any elaboration, reference to record evidence, or supporting case law, Stacey makes passing reference to the fact that his arrest occurred prior to the search of the vehicle. However, "detention in a police cruiser does not automatically transform a *Terry* stop into an arrest. . . . . Nor does the use of handcuffs exceed the bounds of a *Terry* stop, so long as the circumstances warrant that precaution." *Houston v. Clark County Sheriff Deputy John Does 1-5*, 174 F.3d 809, 815 (6th Cir. 1999) (citations omitted). Stacey's conclusory assertion is simply insufficient to carry his burden to demonstrate Officer Blanton's actions deprived him of a constitutional right or to otherwise defeat a motion for summary judgment. *See Alexander v. Caresource,* 576 F.3d 551, 560 (6th Cir. 2009) ("Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment.").

Blanton determined that probable cause existed to arrest Stacey for possession of drug paraphernalia based upon: (1) Stacey appearing to hide something upon Blanton's initiating the traffic stop; (2) Officer Blanton smelling marijuana upon approaching the car;[6] (3) Stacey refusing to exit the vehicle upon Blanton's request; (4) Stacey avoiding eye contact with Blanton, appearing nervous, and perspiring during his interactions with Blanton; and (5) Blanton observing in plain sight on the passenger-side floor a scale with what appeared to be marijuana residue on it on. Based upon these facts, a prudent officer could have concluded that there was sufficient evidence to believe that Stacey was in possession of drug paraphernalia. In other

---

[6] Although Plaintiff's affidavit states that he does not smoke marijuana (Stacey Aff. 3, Doc. 21-1 at PageID 25), this does not create a general issue of material fact as to Blanton's testimony that he smelled the strong odor of marijuana. *See e.g., Abbo v. Wyoming*, __ F. App'x __, Case No. 13-8079, 2014 WL 7375612, at *2 n.4 (10th Cir. Dec. 30, 2014) (finding that a district court did not improperly resolve a factual dispute in the favor of the moving party as to whether troopers actually smelled marijuana where the district court found that the troopers' subjective belief that they smelled marijuana was not disputed and did not defeat their probable cause determination).

words, a reasonable officer under the same circumstances would have believed that the arrest was lawful.[7]

Stacey has thus failed to carry his burden of demonstrating that Officer Blanton is not entitled to qualified immunity. Having found that Blanton's actions did not result in a constitutional violation, the Motion for Summary Judgment is GRANTED.

IT IS SO ORDERED.


Date: March 2, 2015                              S/Susan J. Dlott
                                                 Judge Susan J. Dlott
                                                 United States District Court

---

[7] Because the Court concludes that Officer Blanton had probable cause to arrest Stacey for possession of drug paraphernalia, the Court need not determine whether Blanton had probable cause for obstruction of official business. *See Atkins,* 94 F. App'x at 348.